HESS, Respondent, v. UNITED RAILWAYS COMPANY, Appellant.

St. Louis Court of Appeals, November 5, 1907.

1. **STREET RAILWAYS: Negligence: Prima-Facie Case.** Where the driver of a vehicle in attempting to pass another vehicle upon the street became entangled with the other and while in that position his horse was injured by collision with a street car passing on a track close to his vehicle, and where the evidence showed that in the position of the wagon and horse the car could have passed without collision with either and the collision was caused by the sudden movement of the horse while the car was passing, there was no negligence on the part of the motorman and the owner of the horse could not recover for the injury to the animal caused by the collision.

2. **PRACTICE: Verdict for Right Party: Erroneous Instruction.** Where a verdict is for the right party, the judgment should not be set aside on account of an erroneous instruction.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

REVERSED AND REMANDED.

*Boyle & Priest, E. T. Francis* and *G. T. Priest* for appellant.

*John P. Leahy* for respondent.

GOODE, J.—Appeal from an order sustaining a motion for a new trial. The action is one for an injury to a horse, inflicted by a trolley car operated by appellant. The accident happened August 16, 1905, about three hundred feet east of the intersection of Hamilton and Easton avenues and on the latter thoroughfare. Respondent is engaged in the grocery business at No. 5899 Easton avenue, which is on the north side of the street a short distance from the scene of the occurrence. A horse and delivery wagon in charge of one of respondent's employees by the name of Isaac Alexander, was driving toward respondent's establishment from the east. That is to say, the boy was driving westward on the south side of Easton avenue. That street was torn up in the vicinity on account of repair work the street railway company was doing. The paving in the street car tracks had been taken up and also a foot south of the tracks. This left a driveway about fourteen or fifteen feet wide between the south curb and the edge of the street where the paving had been removed. Immediately in front of respondent's horse and wagon and proceeding in the same direction, were another horse and wagon owned by the Nelson-Morris Company. The latter were stopped in their westward course by a buggy, and when they stopped, Alexander, who was in charge of respondent's wagon, attempted to drive around the Nelson-Morris wagon and in doing so one wheel of respondent's wagon locked in a wheel of the other. Alexander had attempted to drive around the Morris wagon by going between it and the torn-up part of the street, there being

sufficient driveway intact for him to do so. While the
two wagons were in this posture one of appellant's trolley cars came along from the west, proceeding eastward
on Easton avenue. The situation of the wagon was visible to the motorman from Hamilton avenue, three hundred feet to the west. The evidence is conflicting as to
whether or not the motorman checked the speed of the
car before reaching the wagon; but there is no charge of
negligence in regard to the speed; as plaintiff counts
only on a violation of the vigilant watch ordinance and
that the motorman did not check or stop the car on the
first appearance of danger to the horse and wagon. As
the car passed it collided with the horse's head about
the nostrils and injured it. Alexander, the driver, said
the part of the car which struck the horse was about
four or five windows back from the front, and the other
testimony is consistent with this statement. The motorman swore he slowed his car when he first noticed the
two wagons and that respondent's driver was then trying to get free of the Nelson-Morris wagon; that he (the
motorman) observing there was plenty of room to pass
without striking either the horse or wagon, moved
the car forward again and after it had gone about half
its length, he heard the breaking of glass, when he immediately stopped. The motorman swore that when he
undertook to pass, the horse was perfectly quiet and
some two or three feet distant from the path of the car.
The court at appellant's instance, instructed the jury
that if they believed respondent's horse was perfectly
still and sufficiently clear of the track to enable the car
to pass without striking it, shortly before the motorman
attempted to pass, and that at said time the driver of the
horse was making no attempt to disentangle the horse
or the wagon, then the motorman had the right to presume the horse would remain in this quiet position and
the further right to proceed with his car; and if the
jury believed that thereafter the car proceeded on its

way and the horse moved so it came in contact with the car, the verdict must be for the company. The court below granted a new trial because it thought there was error in this instruction. Other instructions were given for respondent, the effect of which was that it was the motorman's duty to stop the car in the shortest time and space possible and consistent with safety to its passengers on the first appearance of danger to the horse and wagon, and that if he failed to do so and the driver was exercising ordinary care in handling the horse, respondent was entitled to a verdict. The instructions given at respondent's request left it to the jury to say whether the horse was in danger of being struck by the car when the motorman started to pass and whether or not the motorman, by keeping vigilant watch, would have seen it was. There was no evidence to establish the only negligence charged; that is, that the motorman failed to stop the car on the first appearance of danger to the horse and wagon. All the testimony goes to show that as the car started to go by the wagon the pathway was clear, with nothing in the situation to suggest danger of a collision, and that the accident occurred by a sudden movement of the horse while the car was passing. Therefore there was no apparent danger of a collision which ought to have induced the motorman to stop. Probably the instruction the lower court held to be erroneous was in the nature of an argument or commentary on the evidence. But granting that it was unsound, the verdict was for the right party. Therefore the judgment is reversed and the cause remanded with a direction to the court to reinstate the verdict and enter judgment for the defendant. All concur.